UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARY FLOWERS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 17-40044-DHH |
| FLLAC EDUCATIONAL | ) | |
| COLLABORATIVE, et al. | ) | |
| Defendants. | ) | |

## ORDER

### November 28, 2017

Hennessy, M.J.

This matter comes before the Court on Defendants FLLAC Educational Collaborative ("FLLAC"), Cheryl Hannam, Ricky Hylson, Holly Jacob, Nancy Levy, Gary MacCallum, Beth Marble, and Sandy Sylvester's motions to dismiss.[1][2] (Dockets #9, 11). Plaintiff Mary Flowers has filed an opposition to the motions. (Docket #15). This matter is now ripe for adjudication. For the reasons that follow, the motions to dismiss (Docket #9, 11) are ALLOWED.

I. BACKGROUND

Flowers is a current employee of FLLAC, a nonprofit corporation that develops and operates educational programs to serve a wide range of students. (Docket #10-1 at 2; Docket #10-2 at 3). One of the educational programs operated by FLLAC is the Caldwell Alternative High School/Middle School (the "Caldwell Alternative School"). (Docket #10-2 at 4). The

---

[1] In her complaint, Flowers misnames several of the defendants. (See Docket #12 at 2). The defendants are recited as named in the complaint.

[2] While FLLAC and the individual Defendants filed separate motions and accompanying memorandums in support of those motions, the memorandums are identical. (See Dockets #10, 12).

Caldwell Alternative School provides educational services to approximately forty middle to high school students with emotional/behavioral concerns, limited academic success, and/or specific learning disabilities. (Id.). Flowers was hired by FLLAC in 1997 as a paraprofessional at the Caldwell Alternative School. (Docket #10-1 at 2).

On December 3, 2012, Flowers filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") alleging a racially hostile work environment, and retaliation. (Id. at 2-3). The MCAD Charge was jointly filed with the United States Equal Employment Opportunity Commission (the "EEOC"). (Id. at 4-5).

On March 4, 2016, the MCAD made a "Lack of Probable Cause Finding." (Docket #10-3). Flowers appealed the decision with the MCAD. (Docket #10-4). Following a hearing, the lack of probable cause finding was affirmed on July 22, 2016. (Id.). On February 24, 2017, the EEOC adopted the findings of the MCAD, dismissed the claims, and issued a right-to-sue letter. (Docket #10-5).

On April 13, 2017, Flowers filed the instant action. (Docket #1). In addition to suing FLACC, Flowers also sued co-workers as individual defendants. (Id.). In the complaint, Flower asserts the following "Statement of Claim:"

> Racial Harassment, the mistreatment of my complaints along with a fals[l]ey written warning involving trickery and neglect. Also learning <u>3</u> months later of a violent write-up and police report filed against me.

(Docket #1 at 4 (emphasis in original)).

II.   STANDARD

Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The statement must

2

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Phelps v. Local 0222, No. 09-11218-JLT, 2010 U.S. Dist. LEXIS 88007, at *13 (D. Mass. Aug. 20, 2010) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)). In addition, the pleadings must afford the defendants "a meaningful opportunity to mount a defense." Diaz-Rivera v. Rivera-Rodriguez, 377 F.3d 119, 123 (1st Cir. 2004) (quotation omitted). At a minimum, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why – although why, when why means the actor's state of mind, can be averred generally." Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004). While the "First Circuit holds a pro se litigant to a standard of pleading less stringent than that for lawyers," "this cannot be taken to mean that pro se complaints are held to no standard at all." Green v. Massachusetts, 108 F.R.D. 217, 218 (D. Mass. 1985).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)). There lies an exception to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. (quoting Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

To survive a motion to dismiss, a plaintiff must "state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Despite this generous standard, "Rule 12(b)(6) is not entirely a toothless tiger . . . [t]he threshold for stating a claim may be low, but it is real." Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (quotation omitted). The complaint must therefore "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988); see DM Research, Inc. v. Coll. Of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (explaining that the complaint must "allege a factual predicate concrete enough to warrant further proceedings").

Although the complaint need not provide "detailed factual allegations," Twombly, 550 U.S. at 555, it must "amplify a claim with some factual allegations . . . to render the claim plausible," Iqbal v. Hasty, 490 F.3d 143, 157–58 (2d Cir. 2007). Thus, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that [the]

plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Though most motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are "premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defenses are definitely ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).

III. ANALYSIS

A. Massachusetts General Laws Chapter 151B

Defendants seek dismissal of any claim asserted pursuant to Massachusetts General Laws chapter 151B, on the basis that such claims are time-barred. (Docket #10 at 4). A party seeking to recover under chapter 151B must file a charge of discrimination with the MCAD within 300 days of the last alleged discriminatory act. Mass. Gen. Laws ch. 151B, § 5. Ninety days following the filing of the complaint with the MCAD, but not later than three years after the alleged unlawful practice occurred, a plaintiff may bring a civil action. Mass. Gen. Laws ch. 151B, § 9. "[A] plaintiff need not wait for the resolution of the MCAD investigation [before bringing a civil action]; the filing of a lawsuit triggers the dismissal of the MCAD complaint if it has not already been resolved by MCAD." Goldstein v. Brigham & Women's Faulkner Hosp., Inc., 80 F. Supp. 3d 317, 324 (D. Mass. 2015).

Flowers filed her charge with the MCAD on December 3, 2012. (Docket #10-1 at 1). She filed the instant complaint in this court on April 13, 2017, more than five years later. (Docket #1). Flowers makes no argument that her claim accrued after the December 3, 2012 filing with the MCAD; instead, she asserts that the limitations period should be equitably tolled due to the length of time it took the MCAD to investigate her charge.[3] (Docket #15 at 1).

"In Massachusetts, [the] extraordinary remedy [of equitable tolling] is applied 'sparingly in discrimination cases.'" Shervin v. Partners Healthcare Sys., 804 F.3d 23, 39 (1st Cir. 2015) (quoting Adamczyk v. Augat, Inc., 52 Mass. App. Ct. 717, 724 (2001)); see Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012) ("Statutes of limitation are critically important in the due administration of justice. They should not lightly be discarded."). "Invoking such a palliative is permitted when, say the plaintiff is excusably ignorant about the statutory filing period, or where the defendant or the MCAD has affirmatively misled the plaintiff." Shervin, 804 F.3d at 39 (quotation and alternations omitted).

Here, Flowers asserts that her MCAD charge was investigated just after the three-year limitations period of Chapter 151B expired, which resulted in her failure to file this matter in a timely manner. (Docket #15 at 1). She makes no allegation that she was unaware of the three-year limitations period or that the MCAD affirmatively misled her and thereby precluded her from filing this suit in a timely manner. Hence, equitable tolling is not appropriate, and I hereby order that Flowers' claims pursuant to Chapter 151B are dismissed as time-barred.

---

[3] I note that this court would be without jurisdiction to entertain any claim of discrimination pursuant to Chapter 151B based on acts or incidents not included in the MCAD charge or rebuttal or not related to matters asserted in the MCAD charge. See Everett v. 357 Corp., 453 Mass. 585, 600 (2009) ("The predicate of administrative filing is mandatory to filing a civil suit [pursuant to Chapter 151B]. It may not be waived.").

B.      Individual Defendants

Flowers' complaint does not indicate whether she has asserted any claims against the individual defendants pursuant to Title VII. (See Docket #1). To the extent that she has asserted such claims, the Defendants correctly argue that those claims must be dismissed. "Title VII addresses the conduct of employers only and does not impose liability on co-workers." Fantini v. Salem State Coll., 557 F.3d 22, 31 (1st Cir. 2009) (quoting Powell v. Yellow Book U.S.A., Inc., 445 F.3d 1074, 1079 (8th Cir. 2006)).

C.      FLLAC

FLLAC argues that Flowers fails to state a claim against it pursuant to Title VII, asserting that her complaint does not satisfy the requirements of Rule 8. (Docket #10 at 7-8). I note that FLLAC correctly argues that the complaint fails to put FLLAC on notice of the claims against which it must defend. (See Docket #1 at 4). However, in addition to the complaint, the court may also consider the MCAD filings in ruling on the motion to dismiss without converting the motion to one for summary judgment. See Edwin v. Blenwood Assocs., 9 F. Supp. 2d 70, 72 (D. Mass. 1998) (holding that MCAD charge could be reviewed in deciding motion to dismiss where civil complaint referenced the MCAD charge and the MCAD charge's contents determined the parameters of the civil complaint). Flowers refers to her MCAD charge in the complaint and also attaches as an exhibit to the complaint her rebuttal to FLLAC's position statement at the MCAD. (See Docket #1 at 4, Docket #1-2 at 5-7). FLLAC seems to concede that the MCAD filings are, among other things, official public records that are properly considered on a motion to dismiss pursuant to Rule 12(b)(6). (Docket #10 at 5 n.3). In assessing the complaint in the instant case, the court finds that it is appropriate to consider Flowers' MCAD filings.

The MCAD Charge consists of the following allegations:

1. During a 2010 FLLAC meeting, Defendant MacCallum the principal of the Caldwell Alternative School recounted an incident of a student using the word "niggah" towards an officer. (Docket #10-2 at 55).

2. In May 2011, Flowers made a formal complaint to FLLAC about the racial harassment she was experiencing. (Docket #10-1 at 2). FLLAC stated that Flowers' allegations were unsupported. (Id.).

3. In November 2011, Flowers was asked to sign a card for MacCallum's birthday by an unidentified person. (Id. at 3). The card had monkeys on it, which Flowers believed were racially derogatory based on MacCallum's past use of racist terms. (Id.).

4. In June 2012, Flowers discovered that $10 she had placed in a change purse inside of a pouch in her pocketbook for gas was missing. (Id. at 2). The following day, MacCallum made an odd comment about a student having a "hard time changing $10 on the bus." (Id.).

5. Also in June 2012, Defendant Richard Hillson wore what Flowers described as "monkey slippers" to school.[4] (Id.). Flowers states that Hillson went out of his way to sit near her, put his foot up, and said "Hi Mary," so that she would see the slippers. (Id.).

6. In September 2012, Flowers observed that her cell phone had been tampered with at work by an unknown person. (Id.).

7. In October 2012, Flowers observed a stuffed panda sitting in MacCallum's chair in his office. (Id.). An unknown person had written "I'm Mr. White" on a sign and placed it on the panda. (Id.).

---

[4] In its Position Statement to the MCAD, FLLAC revealed that the "monkey slippers" were in fact Vibram five finger shoes, which Hillson wore when taking students on hikes. (Docket #10-2 at 7). There is no allegation that anyone other than Flowers referred to the shoes as "monkey slippers."

8. Also in October 2012, Defendant Hollie Jacobs, a white FLLAC counselor, went out of her way to sit with Flowers. MacCallum then entered the room and said he wanted to sit in the "cool area." Jacobs responded, "Oh, the back of the bus?" (Id.).

9. Also in October 2012, Defendant Cheryl Hannam, a white FLLAC teacher, commented to Flowers while she was eating ice cream, that she eats "Jimmies," meaning that she eats chocolate sprinkles and explained that she referred to other sprinkles as "colored." (Id.).

10. That same month, when Flowers wore light tan overalls to work, Defendant Nancy Major, a white teacher for FLLAC, told Flowers that she had a "dream about slaves in white overalls" the night before. (Id. at 3).

11. Also in October 2012, Defendant Sandra Silvestre, a white FLLAC teacher, played a recording on her phone that sounds like the cracking of a whip. (Id.). She commented that she used the noise "to keep the kids in line" at school. (Id.).

12. On November 7, 2012, Defendant Elizabeth Marple, a white paraprofessional for FLLAC, approached Flowers with a card to sign for MacCallum's birthday. (Id.). Flowers observed that the card had monkeys on it and realized that it was the same card as the prior year. (Id.). Flowers asked Marple if it was the same card, to which she replied, "It's a card." (Id.). Flowers refused to sign the card and did not attend the birthday celebration. (Id.).

13. On November 8, 2012, Flowers confronted Marple and told her that she was "never ever to put that card in my face again."[5] (Id.).

---

[5] In her rebuttal with the MCAD, Flowers included a narrative by a Fitchburg Police Officer. (Docket #10-8 at 17). According to the narrative, on November 9, 2012, Marple told the officer that, after she asked Flowers to sign the birthday card, Flowers backed her into a corner and waved a pencil in her face. (Id.). Marple stated that she felt threatened and thought that Flowers might hit her. (Id.). Marple advised that she just wanted the incident documented and asked that the officer not contact Flowers for her view of the events. (Id.). There is no allegation that FLLAC knew of or encouraged Marple to take this action.

14. On November 13, 2012, Flowers received a written warning from FLLAC based on the birthday card confrontation with Marple. (Id.).

The court will not consider Flowers' allegation that, in 2004, she observed MacCallum making comments or statements that were race-based and offensive, and that around this time, he used the "n" word. (See Id.). A charge of discrimination must be filed with the EEOC and/or MCAD within 300 days after the unlawful conduct occurred. See 42 U.S.C. § 2000e-5(e)(1). However, a plaintiff may include claims for actions outside of the limitations period if they form part of a continuing violation. The continuing violation doctrine is "an equitable exception to Title VII's statute of limitations" that "allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims." Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 474 (1st Cir. 2010) (quotations omitted). Continuing violations can take either of two forms: systemic violations or serial violations. Lawton v. State Mut. Life Assur. Co. of Am., 101 F.3d 218, 221-222 (1st Cir. 1996). The 2004 conduct is not encompassed by either form.

"A systemic violation has its roots in a discriminatory policy or practice, so long as the policy or practice itself continues into the limitations period, a challenger may be deemed to have filed a timely complaint." Provencher v. CVS Pharm, 145 F.3d 5, 14 (1st Cir. 1998) (quoting Sabree v. United Bhd. of Carpenters & Joiners Local No. 33, 921 F.2d 396, 400 n.7 (1st Cir. 1990)). Flowers identifies no such policy or practice here.

"A serial violation occurs where a chain of similar discriminatory acts emanating from the same discriminatory animus exists and where there has been some violation within the statute of limitations period that anchors the earlier claims." Provencher, 145 F.3d at 14. But "[e]ven

where a plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." Id. Flowers clearly should have been aware that MacCallum's alleged use of the "n" word in addition to his race-based statements was discriminatory. Additionally, there was over a five year gap in between this allegation of hostile conduct and the next allegation of hostile conduct.

Hence, in order for the 2004 conduct to be actionable, Flowers was required to file an MCAD charge addressing it within 300 days of the alleged discriminatory conduct. Presumably this is the reason that the MCAD failed to address this allegation in its investigative disposition. (See Docket #10-3).

1. Racially Hostile Work Environment

To make out a prima facie case of hostile work environment, a plaintiff must show: "(1) [s]he is a member of a protected class; (2) [s]he experienced uninvited harassment; (3) the harassment was racially-based; (4) the harassment was so severe or pervasive as to create an abusive work environment; and (5) the harassment was objectively and subjectively offensive." Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008). To determine whether an environment is sufficiently hostile, a court should "look[] at all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (internal quotation omitted). "A hostile work environment generally is not created by a mere offensive utterance, nor does it arise from simple teasing, offhand comments, and isolated incidents." Ugurhan Akturk Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003) (internal quotation omitted).

"Courts are supposed to use 'common sense, and an appropriate sensitivity to social context,' to distinguish between such innocuous behavior and severely hostile or abusive conduct." Id. (quoting Oncale v. Sundowner Offshore Serv., 523 U.S. 75, 82 (1998)).

Flowers' allegations address two instances that are explicitly racial in nature -- MacCallum's use of the work "niggah" during a meeting and Major's discussion concerning her dream about slaves. Although the word "niggah" has unique meaning that makes its use particularly egregious, see Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir. 2001), the use of "a slur is not in and of itself proof of actionable discrimination, even if repeated," Shager v. Upjohn Co., 913 F.2d 398, 402 (7th Cir. 1990). "The remark taken to be a slur may have been innocent and misunderstood; or it may have had no consequence, either because it did not reflect the thinking of the people with decision-making authority or because it did not motivate even the person uttering it to act on it." Id. Here, MacCallum's use of the slur is objectively innocent. It was not directed towards any particular person, but instead was merely the principal's account, during a school meeting, of a student's statement towards an officer. (Docket #10-2 at 55). Likewise, while Major's discussion of her dream is admittedly awkward, it is not objectively offensive. The court notes that Flowers makes no other allegations of discriminatory conduct on the part of Majors. Neither of these allegations involve conduct so objectively offensive or harassing as to create an abusive work environment. Nor do the rest of the allegations, taken on their own, amount to objectively offensive or harassing behavior.

Having found that these allegations, separately, do not create a racially-motivated hostile work environment, the court must now decide whether Flowers' allegations amount to a hostile work environment in the aggregate. Although the majority of Flowers' allegations do not describe conduct that is explicitly racial in nature, such conduct "may, in appropriate

12

circumstances, be considered along with more overtly discriminatory conduct in assessing a Title VII harassment claim." Landrau-Romero v. Banco-Popular de Puerto Rico, 212 F.3d 607, 614 (1st Cir. 2000). In making this determination, the court finds the case Williams v. Dallas Independent School District, cited by the Defendants, instructive.

In Williams, the African-American plaintiff alleged that a white co-worker created a hostile work environment by making racially derogatory comments, exhibiting racially derogatory literature, and playing racially derogatory music to her and other African-American employees. Williams v. Dallas Indep. Sch. Dist., No. 3:02-CV-1229-K, 2003 U.S. Dist. LEXIS 12143, at *1 (N.D. Tex. July 15, 2003). The factual allegations underlying the complaint consisted of four incidents. The first incident of which the plaintiff complained was her receipt of a thank-you card from the co-worker which featured a folk art picture of a monkey on it. Id. at *2. The plaintiff alleged that, on another occasion, the same co-worker left a screen saver playing on her computer with "jungle sounds" and a picture of a monkey swinging through trees "screaming his fool head off." Id. The plaintiff also asserted that the same co-worker made two racially derogatory comments to her. Id. at *2-3. The first statement had to do with the co-worker's family once "owning" the plaintiff's family, thus explaining their shared last name. Id. at *3. The second statement the co-worker made was that African-American children had a harder time reading than white children. Id. The court determined that all the incidents, taken together, failed to rise to a level of "severe and pervasive" conduct sufficient to warrant Title VII relief, noting that "[i]solated, offhand comments, discourtesy, and rudeness do not meet this standard." Id. at *7 (quoting Jeffery v. Dallas Cty. Med. Exam'r, 37 F. Supp. 2d 525, 531 (N.D. Tex. 1999)).

The conduct of which Flowers complains is similar in nature to that held not to warrant Title VII relief in Williams. Like that complained of in Williams, the conduct here is not actionable under Title VII. The court finds that the conduct is not objectively offensive, and even if it could be considered so, the conduct consisted of "mere offensive utterance[s][,] simple teasing, offhand comments, and isolated incidents." See Ugurhan Akturk Kosereis, 331 F.3d at 216. The allegations, taken in the aggregate, fail to establish conduct so objectively severe or pervasive as to create an abusive work environment.

2. Retaliation

"Title VII makes it unlawful 'for employers to retaliate against persons who complain about unlawfully discriminatory employment practices.'" Ahern v. Shinseki, 629 F.3d 49, 55 (1st Cir. 2010) (quoting Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005)). To establish a prima facie case of retaliation, a plaintiff must show "(i) that she engaged in protected activity; (ii) that she bore the brunt of a materially adverse action; and (iii) that the first two elements were causally linked to one another." Id.

The anti-retaliation provision of Title VII "covers all 'employer actions that would have been materially adverse to a reasonable employee,' defined as actions that are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Ahern, 629 F.3d at 55 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). This objective assessment 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" Id. at 55-56 (quoting Oncale, 523 U.S. at 81). "Adverse employment actions include demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Marrero v. Goya of P.R., Inc.,

304 F.3d 7, 23 (1st Cir. 2002) (quoting White v. N.H. Dep't of Corrections, 221 F.3d 254, 262 (1st Cir. 2000)).

Flowers fails to allege that she suffered any adverse employment action at the hands of FLLAC following her complaint of discrimination in May 2011. While Flowers received a written warning a year-and-a-half later in November 2012 following the incident with Marple, she has not alleged that she suffered any consequences to her conditions of employment as a result of the warning.[6] Hence, the written warning was not an adverse employment action because it did not carry with it any tangible consequences to Flower's employment. See Bhatti v. Trs. of Boston Univ., 659 F.3d 64, 73 (1st Cir. 2011) ("[A] criticism that carries with it no consequences is not materially adverse and therefore not actionable."). Equally unavailing are her allegations of harassment following the discrimination complaint. For a plaintiff to prove retaliation based on an employer's toleration of harassment, she must show that the harassment was "severe or pervasive" and, necessarily, that the harassment occurred after her protected conduct. Marrero, 304 F.3d at 26. As discussed above, Flowers' allegations do not demonstrate harassment that was either severe of pervasive.[7]

---

[6] A review of the documents submitted at the MCAD shows that the written warning posed no consequences to Flowers. It admonished Flowers that her actions towards Marple were "unacceptable behavior at FLLAC and cannot happen again." (Docket #10-2 at 108).

[7] Having determined that the motion for summary judgment is properly granted for the reasons explained above, the court declines to address defendants' argument about improper service.

IV.     CONCLUSION

For the foregoing reasons, I ORDER that the Motions to Dismiss (Dockets #9 and 11) be ALLOWED.

/S/ David H. Hennessy  
David H. Hennessy  
UNITED STATES MAGISTRATE JUDGE